IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY REGAL and BRIAN REGAL ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
|        v. ) | Case No.  3:11-cv-272-MJR-SCW |
| ) | |
| ASSOCIATED CREDITORS EXCHANGE, ) | |
| INC., ) | |
| ) | |
|    Defendant. ) | |
| ) | |

**DEFENDANT'S ANSWER TO THE COMPLAINT**

ASSOCIATED CREDITORS EXCHANGE, INC., defendant herein, by its attorney Bradley H. Foreman, of The Law Offices of Bradley H. Foreman, P.C., for its Answer to the Complaint states as follows:

I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

ANSWER:  Defendant admits that plaintiffs have brought this action for alleged violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA").  Defendant denies that any such violations have occurred.

II.     JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq. and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

ANSWER:  Defendant admits that plaintiffs have brought this action for alleged violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA") and that subject matter jurisdiction

is premised on alleged violations of said Act. Defendant denies that any such violations have occurred.

    3.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

ANSWER:  Defendant does not contest venue.

### III. PARTIES

    4. AMY REGAL, (hereinafter, "Amy") is an individual who was at all relevant times residing at Scott Airforce Base, County of St. Clair, State of Illinois.

ANSWER:  Defendant lacks knowledge sufficient to form a belief about the truth of this allegation and therefore the allegation is deemed denied under FRCP 8(b)(5).

    5.    BRIAN REGAL, (hereinafter, "Brian") is an individual who was at all relevant times residing at Scott Airforce Base, County of St. Clair, State of Illinois.

ANSWER: Defendant lacks knowledge sufficient to form a belief about the truth of this allegation and therefore the allegation is deemed denied under FRCP 8(b)(5).

    6.    The debt that Plaintiffs were allegedly obligated to pay was a debt allegedly owed by Plaintiffs to US Bank.

ANSWER: Defendant admits that plaintiffs were obligated on a debt to US Bank.

    7.    The debt that Plaintiffs allegedly owed US Bank was for a credit card, the charges on which were incurred for the personal use of Plaintiffs and/or for household expenditure.

ANSWER: Defendant admits that plaintiffs were obligated on a debt to US Bank as alleged.

    8.    At all relevant times, Plaintiffs were "consumers" as that term is defined by 15 U.S.C. §1692a(3).

ANSWER: Defendant admits the allegations of paragraph 8.

    9.    ASSOCIATED CREDITORS EXCHANGE, INC., (hereinafter, "Defendant")

is a business entity engaged in the collection of debt within the State of Illinois. Defendant is incorporated in the State of Arizona.

ANSWER: Defendant admits the allegations of paragraph 9.

10.    The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

ANSWER: Defendant admits the allegations of paragraph 10.

11.    Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

ANSWER:  Defendant admits the allegations of paragraph 11.

12.    During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

ANSWER: Defendant admits the allegations of paragraph 12.

13.    At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

ANSWER:  Defendant admits the allegations of paragraph 13.

14.    At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

ANSWER: Defendant admits that it acts and acted through its authorized agents and employees.  Defendant denies the remaining allegations of this paragraph 14.

IV.     ALLEGATIONS

COUNT I: AMY REGAL v. ASSOCIATED CREDITORS EXCHANGE, INC.

15.     Amy re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

ANSWER: Defendant repeats and realleges its answers to paragraphs 1 through 14 above as and for its answer to this paragraph 15.

16.     On or about October 6, 2010 through in or around December 2010, and on multiple occasions therein, Defendant initiated telephone calls to Plaintiffs in an attempt to collect a debt Plaintiffs allegedly owed to US Bank.

ANSWER: Defendant admits the allegations of paragraph 16.

17.     During the course of the aforementioned time period, Defendant initiated a telephone call to Amy's residence and left a voicemail message.

ANSWER: Defendant admits the allegations of paragraph 17.

18.     During the course of the aforementioned voicemail message Defendant disclosed that it was a debt collector, attempting to collect a debt and that any information obtained would be used for that purpose.

ANSWER: Defendant admits the allegations of paragraph 18.

19.     At the time Defendant left the aforementioned voicemail message a third-party was at Amy's residence.

ANSWER:  Defendant lacks knowledge sufficient to form a belief about the truth of this allegation and therefore the allegation is deemed denied under FRCP 8(b)(5).

20.     At the time Defendant left the aforementioned voicemail message a third-party heard the voicemail message left by Defendant.

ANSWER:  Defendant lacks knowledge sufficient to form a belief about the truth of this allegation and therefore the allegation is deemed denied under FRCP 8(b)(5).

21. Amy did not consent to Defendant communicating third-parties.

ANSWER: Defendant admits the allegation of this paragraph 21; defendant denies that it communicated with any third parties in violation of applicable law.

22. Brian is a flight medic employed by the United States Army wherein the base commander is one of Brian's supervisor's at his place of employment.

ANSWER: Defendant lacks knowledge sufficient to form a belief about the truth of this allegation and therefore the allegation is deemed denied under FRCP 8(b)(5).

23. During the aforesaid time period, during a telephone call between Defendant and Amy, Defendant told Amy that it was going to contact Brian's base commander, a supervisor at Brian's place of employment, regarding the debt that Plaintiffs owed.

ANSWER: Defendant denies the allegations of this paragraph 23.

24. Defendant's representation that it was going to contact Brian's base commander was a statement made by Defendant in an effort to abuse and harass Plaintiffs.

ANSWER: Defendant denies the allegations of this paragraph 24.

25. From October 2010 through December 2010, and on multiple occasions therein, Defendant proceeded to contact Brian's employer.

ANSWER: Defendant denies the allegations of this paragraph 25.

26. On or about October 15, 2010, and on multiple occasions during the course of the aforementioned time period, Amy specifically advised Defendant that Brian's employer did not permit him to accept calls of such nature while he is at work.

ANSWER: Defendant denies the allegations of this paragraph 26.

27.     Subsequent to October 15, 2010, and on multiple occasions thereafter, despite Amy having advised Defendant on multiple occasions that Brian's employer prohibited him from receiving calls such as those from Defendant, Defendant proceeded to initiate multiple telephone calls to Brian at his place of employment.

ANSWER: Defendant denies the allegations of this paragraph 27.

28.     In or around November 2010, Amy engaged in a telephone conversation with Defendant wherein Amy requested that Defendant provide her with documentation with respect to the debt on which it was attempting to collect.

ANSWER: Defendant denies the allegations of this paragraph 28.

29.     Defendant stated that it already sent her documentation and that it "knew [Amy] threw away the letter along with all her other bills that she did not pay them."

ANSWER: Defendant denies the allegations of this paragraph 29.

30.     Defendant further told Amy that her husband Brian had attempted to ask one of Defendant's representatives out on a date in order to pay off the bill that Plaintiffs owed.

ANSWER: Defendant denies the allegations of this paragraph 30.

31.     Defendant's representation, as delineated above, was false, deceptive an/or misleading given that Brian never attempted to engage in the aforesaid conduct with respect to Defendant's representative.

ANSWER: Defendant denies the allegations of this paragraph 31.

32.     During the aforesaid telephone call, Defendant further told Amy that she was a "lazy stay at home mom."

ANSWER: Defendant denies the allegations of this paragraph 32.

33.     The natural consequence of Defendant's statements was to unjustly condemn

and vilify Amy for the non-payment of the debt allegedly owed US Bank.

ANSWER:  Defendant denies the allegations of this paragraph 33.

34.   The natural consequence of Defendant's statements was to produce an unpleasant and/or hostile situation between Defendant and Amy.

ANSWER:  Defendant denies the allegations of this paragraph 34.

35.   The natural consequence of Defendant's statements was to cause Amy mental distress.

ANSWER:  Defendant denies the allegations of this paragraph 35.

36.   During the course of a telephone call between Defendant and Amy, Defendant stated that it was going to garnish Brian's wages unless Plaintiffs paid the debt that they owed.

ANSWER: Defendant denies the allegations of this paragraph 36.

37.   At the time Defendant made the aforementioned threat to have Brian's wages garnished, no lawsuit had been filed against Brian for the debt he allegedly owed.

ANSWER: Defendant admits that no lawsuit had been filed against Brian, but denies that any of the alleged threats were made by defendant to either one of the plaintiffs.

38.   At the time Defendant made the aforementioned threat to have Brian's wages garnished, no judgment had been entered against Brian for the debt he allegedly owed.

ANSWER:  Defendant admits that no judgment had been entered against Brian, but denies that any of the alleged threats were made by defendant to either one of the plaintiffs.

39.   The debt allegedly owed by Brian is not a debt that can proceed to garnishment without Defendant first having secured a judgment against Brian for the alleged debt.

ANSWER: Defendant admits the legal conclusion that Brian's wages cannot be garnished under Illinois law without a judgement; Defendant denies that any of the alleged threats to garnish

Case 3:11-cv-00272-MJR -SCW Document 7    Filed 05/18/11   Page 8 of 17

were made by defendant to either one of the plaintiffs.

    40.    In its attempts to collect the debt allegedly owed by Plaintiffs, Defendant violated the FDCPA, 15 U.S.C. §1692, with respect to Amy in one or more of the following ways:

    a. Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and failed to identify himself, failed to state that he is confirming or correcting location information concerning the consumer, and/or identified his employer without the express request of the consumer in violation of 15 U.S.C. §1692b(1);

    b. Communicated in connection with the collection of any debt with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector in violation of 15 U.S.C. §1692c(b);

    c. Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

    d. Used obscene or profane language or language the natural consequence of which is to abuse the hearer or reader in violation of 15 U.S.C. §1692d(2);

    e. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

    f. Represented or implied that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action in violation of 15 U.S.C. §1692e(4);

    g. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

8

  h. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(1O);

  I. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,

  j. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

ANSWER: Defendant denies that it violated FDCPA in any of the alleged ways.

  41. As a result of Defendant's violations as aforesaid, Amy has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

ANSWER: Defendant denies the allegations of this paragraph 41.

WHEREFORE, Defendant ASSOCIATED CREDITORS EXCHANGE, INC., by and through its attorneys, respectfully prays for judgment against plaintiffs and for a dismissal of the Complaint with prejudice and with an award of all costs incurred.

COUNT II: BRIAN REGAL v. ASSOCIATED CREDITORS EXCHANGE, INC.

  42. Brian re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

ANSWER:  Defendant repeats and realleges its answers to paragraphs 1 through 41 above as and for its answer to this paragraph 42.

  43. On or about October 6, 2010 through in or around December 2010, and on multiple occasions therein, Defendant initiated multiple telephone calls to Plaintiffs in an attempt to collect a debt Plaintiffs allegedly owed to US Bank.

ANSWER:  Defendant admits the allegations of this paragraph 43.

  44. During the course of the aforementioned time period, Defendant initiated a

telephone call to Brian's residence and left a voicemail message.

ANSWER: Defendant admits the allegations of this paragraph 44.

45. During the course of the aforementioned voicemail message Defendant disclosed that it was a debt collector, attempting to collect a debt and that any information obtained would be used for that purpose.

ANSWER: Defendant admits the allegations of this paragraph 45.

46. At the time Defendant left the aforementioned voicemail message a third-party was at Brian's residence.

ANSWER: Defendant lacks knowledge sufficient to form a belief about the truth of this allegation and therefore the allegation is deemed denied under FRCP 8(b)(5).

47. At the time Defendant left the aforementioned voicemail message a third-party heard the voicemail message left by Defendant.

ANSWER: Defendant lacks knowledge sufficient to form a belief about the truth of this allegation and therefore the allegation is deemed denied under FRCP 8(b)(5).

48. Brian did not consent to Defendant communicating with third parties.

ANSWER: Defendant admits the allegation of this paragraph 48; defendant denies that it communicated with any third parties in violation of applicable law.

49. On or about October 6, 2010 through December 2010, and on multiple occasions therein, Brian engaged in multiple telephone calls with Defendant.

ANSWER: Defendant admits the allegations of this paragraph 49.

50. Subsequent to October 6, 2010 through in or around December 2010, and on multiple occasions therein, despite having multiple contacts with Brian and despite being fully cognizant of Brian's location, Defendant proceeded to initiate multiple telephone calls to third-parties

in an attempt to collect a debt Plaintiffs allegedly owed.

ANSWER: Defendant denies the allegations of this paragraph 50.

51. In or around September 2010, Defendant initiated a telephone call to Brian's brother.

ANSWER: Defendant denies the allegation of this paragraph 51.

52. Brian is a flight medic employed by the United States Army wherein the base commander is one of his supervisor's at his place of employment.

ANSWER: Defendant lacks knowledge sufficient to form a belief about the truth of this allegation and therefore the allegation is deemed denied under FRCP 8(b)(5).

53. Defendant told Brian's brother that it was going to contact Brian's base commander, at Brian's place of employment, regarding the debt that Brian owed.

ANSWER: Defendant denies the allegations of this paragraph 53.

54. During the aforesaid time period, Defendant also told Amy that it was going to contact Brian's base commander regarding the debt that Brian owed.

ANSWER: Defendant denies the allegations of this paragraph 54.

55. Defendant's representation that it was going to contact Brian's base commander was a statement made by Defendant in an effort to abuse and harass Plaintiffs.

ANSWER: Defendant denies the allegations of this paragraph 55.

56. Subsequent to October 6, 2010 through in or around December 2010, and on multiple occasions therein, despite having multiple contacts with Brian and despite being fully cognizant of Brian's location, Defendant proceeded to initiate multiple telephone calls to Brian's place of employment.

ANSWER: Defendant denies the allegations of this paragraph 56.

57.     From October 15, 2010 through December 2010, and on multiple occasions therein, Brian specifically advised Defendant that his employer did not permit him to accept calls of such nature while he was at work.

ANSWER: Defendant denies the allegations of this paragraph 57.

58.     From October 15, 2010 through December 2010, and on multiple occasions therein, Amy also specifically advised Defendant that Brian's employer did not permit him to accept calls of such nature while he was at work.

ANSWER: Defendant denies the allegations of this paragraph 58.

59.     Subsequent to October 15, 2010 through December 2010, and on multiple occasions thereafter, despite having been advised on multiple occasions that Brian's employer prohibited him from receiving calls such as those from Defendant and despite being cognizant of Brian's location, Defendant proceeded to initiate multiple telephone calls to Brian at his place of employment.

ANSWER: Defendant denies the allegations of this paragraph 59.

60.     During a telephone call to Brian's employer, Defendant's duly authorized representative demanded to speak to a supervisor at Brian's place of employment.

ANSWER: Defendant denies the allegations of this paragraph 60.

61.     During Defendant's telephone calls to Brian's employer, Defendant spoke with Brian's co-workers wherein Defendant informed Brian's co-workers that he owed a debt.

ANSWER: Defendant denies the allegations of this paragraph 61.

62. In December 2010, Defendant initiated a telephone call to Brian at his place of employment wherein Brian, again, advised Defendant that he was not able to speak to Defendant while he was at work.

ANSWER: Defendant denies the allegations of this paragraph 62.

63. Brian then disconnected the telephone call with Defendant.

ANSWER: Defendant admits that on one or more occasions plaintiff Brian terminated telephone contact with defendant.

64. Immediately thereafter, Defendant initiated another telephone call to Brian at his place of employment and engaged in a telephone conversation with one of Brian's supervisors.

ANSWER: Defendant denies the allegations of this paragraph 64.

65. During Defendant's telephone calls with third-parties, as delineated above, Defendant representatives did not state that they were calling to confirm or correct location information for Brian.

ANSWER: Defendant denies the allegations of this paragraph 65.

66. In or around November 2010, Brian engaged in a telephone call with Defendant wherein Brian requested that Defendant provide him with written documentation relative to the debt on which it was attempting to collect.

ANSWER: Defendant denies the allegations of this paragraph 66.

67. Defendant's duly authorized representative told Brian that it would not send him documentation since he was "engaging in a stall tactic."

ANSWER: Defendant denies the allegations of this paragraph 67.

68. In or around November 2010, Amy engaged in a telephone conversation with Defendant wherein Defendant told Amy that her husband Brian had attempted to ask one of Defendant's representatives out on a date in order to pay off the bill that Plaintiffs owed.

ANSWER: Defendant denies the allegations of this paragraph 68.

69. Defendant's representation was false, deceptive an/or misleading given that Brian never attempted to engage in the aforesaid conduct with respect to Defendant's representative.

ANSWER: Defendant denies the allegations of this paragraph 69.

70. The natural consequence of Defendant's statements was to unjustly condemn and vilify Brian for his non-payment of the debt that he allegedly owed US Bank.

ANSWER: Defendant denies the allegations of this paragraph 70.

71. The natural consequence of Defendant's statements was to produce an unpleasant and/or hostile situation between Defendant and Brian.

ANSWER: Defendant denies the allegations of this paragraph 71.

72. The natural consequence of Defendant's statements was to cause Brian mental distress.

ANSWER: Defendant denies the allegations of this paragraph 72.

73. During the course of a telephone call between Defendant and Amy, Defendant stated that it was going to garnish Brian's wages unless Brian paid the debt that he owed.

ANSWER: Defendant denies the allegations of this paragraph 73.

74. At the time Defendant made the aforementioned threat to have Brian's wages garnished, no lawsuit had been filed against Brian for the debt he allegedly owed.

ANSWER: Defendant admits that no lawsuit had been filed against Brian, but denies that any such threats were made to either one of the plaintiffs.

75. At the time Defendant made the aforementioned threat to have Brian's wages garnished, no judgment had been entered against Brian for the debt he allegedly owed.

ANSWER: Defendant admits that no judgment had entered against Brian, but denies that any such threats were made to either one of the plaintiffs.

76. The debt allegedly owed by Brian is not a debt that can proceed to garnishment without Defendant first having secured a judgment against Brian for the alleged debt.

ANSWER: Defendant admits the legal conclusion that Brian's wages cannot be garnished under Illinois law without a judgement; Defendant denies that any of the alleged threats to garnish were made by defendant to either one of the plaintiffs.

77. In its attempts to collect the debt allegedly owed by Plaintiffs, Defendant violated the FDCPA, 15 U.S.C. § 1692, with respect to Brian in one or more of the following ways:

a. Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and failed to identify himself, failed to state that he is confirming or correcting location information concerning the consumer, and/or identified his employer without the express request of the consumer in violation of 15 U.S.C. §1692b(1);

b. Communicated with any person other than the consumer more than once without authorization from the consumer and without a reasonable belief that the earlier response from said person as to the consumer's location was erroneous or incomplete in violation of 15 U.S.C. §1692b(3);

c. Communicated with the consumer at an unusual time and place or at a time or place which should be known to be inconvenient to the consumer in violation of 15 U.S.C. § 1692c(a)(I);

d. Communicated with the consumer at the consumer's place of employment

despite knowing or having reason to know that the consumer's employer prohibits the consumer from receiving such communication in violation of 15 U.S.C. §1692c(a)(3);

  e. Communicated in connection with the collection of any debt with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector in violation of 15 U.S.C. § 1692c(b);

  f. Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

  g. Used obscene or profane language or language the natural consequence of which is to abuse the hearer or reader in violation of 15 U.S.C. §1692d(2);

  h. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

  I. Represented or implied that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action in violation of 15 U.S.C. §1692e(4);

  j. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

  k. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

  l. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,

  m. Was otherwise deceptive and failed to comply with the provisions of the

FDCPA.

ANSWER: Defendant denies that it violated the FDCPA in any one of the alleged ways.

78.   As a result of Defendant's violations as aforesaid, Brian has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

ANSWER: Defendant denies the allegations of this paragraph 78.

WHEREFORE, Defendant ASSOCIATED CREDITORS EXCHANGE, INC., by and through its attorneys, respectfully prays for judgment against plaintiffs and for a dismissal of the Complaint with prejudice and with an award of all costs incurred.


**ASSOCIATED CREDITORS EXCHANGE, INC**.

By: /s/ Bradley H. Foreman
    Bradley H. Foreman, Its Attorney


**CERTIFICATE OF SERVICE**

I, Bradley H. Foreman, the attorney, certify (a non-attorney, on oath state) on May 18, 2011, I served this document by mailing a copy to the party listed below at the address stated below and depositing the same in the U.S. Mail with proper postage prepaid.

/s/ Bradley H. Foreman


To:
Mr. David M. Marco
Larry P. Smith & Associates, Ltd.
205 North Michigan Avenue, 40th Floor
Chicago, IL 60601